**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ELM 3DS INNOVATIONS, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>HON. MICHELLE K. LEE, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:16-cv-1036<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## Memorandum Opinion

This matter comes before the Court on Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) brought separately by Defendant Michelle Lee, in her capacity as Director of the United States Patent and Trademark Office and by Intervenor-Defendants Micron Technology, Inc.; Micron Semiconductor Products, Inc.; and Micron Consumer Products Group, Inc. (collectively, "Micron"), SK hynix Inc., SK Hynix America Inc., and SK hynix Memory Solutions Inc. (collectively "SK hynix"), and Samsung Electronics Co., Ltd., Samsung Semiconductor, Inc., Samsung Electronics America, Inc., and Samsung Austin Semiconductor, LLC (collectively "Samsung") (together "Intervenor-Defendants"). Dkt. Nos. 51, 55. The matter has been fully briefed by the parties.

The Plaintiff's Complaint challenges the PTO's authority under the APA to treat certain days as if they were federal holidays in the District of Columbia for the purpose of tolling United States Patent and Trademark Office ("PTO") filing deadlines while the PTO electronic filing

system was disabled by a major power outage. For the reasons discussed below, the Court GRANTS the Motions to Dismiss and the Complaint is DISMISSED WITH PREJUDICE.

## I. Background

### A. Factual Background

In 2014, Plaintiff filed multiple suits against the Intervenor-Defendants in the District of Delaware severally alleging that the Intervenor-Defendants had sold products which infringed upon Plaintiff's patents. *See, Elm 3DS Innovations, LLC v. Micron Technology Inc., et al.*, Case No. 1:14-cv-01431-LPS-CJB (D. Del., filed November 21, 2014); *Elm 3DS Innovations, LLC v. SK hynix Inc., et al.*, Case No. 1:14-1432-LPS-CJB (D. Del., filed November 21, 2014); *Elm 3DS Innovations, LLC v. Samsung Electronics Co., Ltd., et al.*, Case No. 1:14-1430- LPS-CJB (D. Del., filed November 21, 2014) (collectively the "Delaware Actions"). Intervenor-Defendants sought to challenge the validity of the patents by filing for Inter Partes Review ("IPR") of the relevant patents before the Patent Trial and Appeal Board ("PTAB"). Pursuant to 35 U.S.C. § 315(b), a party cannot file an IPR petition more than one year after "the petitioner is served with a complaint alleging infringement of the patent." Intervenor-Defendants were served in the Delaware Actions on December 23, 2014, resulting in an IPR filing deadline of December 23, 2015.

A power outage on December 22, 2015, rendered the PTO electronic filing system unavailable through December 24, 2015. The PTO, through Director Lee, issued an official notice that the three days during which the filing system was unavailable would be regarded as if they were federal holidays in the District of Columbia. Any PTO or PTAB filings due on these days would be considered timely if filed by December 28, 2015, the next business day following the outage. Relying on Director Lee's notice and other communications with PTAB, Intervenors

filed nine petitions for IPR of Elm's patents on December 28, 2015. Trials were instituted by the PTO on each of the petitions in July 2016, the trials are ongoing, and final decisions are expected in July 2017. The Delaware Actions were stayed pending the outcome of the IPRs.

Plaintiff filed a Complaint pursuant to the Administrative Procedures Act ("APA") on August 12, 2016, arguing that Defendant Lee exceeded her authority by declaring that December 22-24, 2015 are federal holidays. Plaintiff seeks a declaration from the Court that Defendant Lee acted outside of her authority by treating the power outage days as federal holidays for the purpose of tolling filing deadlines and enjoining the PTO from continuing to rely on her extension of the deadlines. If the Court were to find that Defendant Lee did exceed her authority, the Intervenor-Defendants' IPR actions should have been filed before December 28, 2015 and would now be time-barred.

B. Inter Partes Review Background

A sophisticated statutory scheme governs the PTO's review of patent validity. Some form of reexamination has existed since 1980 and Congress has revised the procedures on numerous occasions since, most recently in 2011.

In 1980, Congress enacted the first statute authorizing "ex parte reexamination" of an issued patent. *See* Pub. L. No. 96-517, 94 Stat. 3015, 6933l (1980). The statute authorized third parties to request a PTO reexamination of the substance of an issued patent but any reexamination proceeding was conducted between the patent owner and the PTO. *Id.* This provision was amended in 1999 to permit the third party to participate in a limited capacity, transforming the *ex parte* reexamination into an *inter partes* reexamination process. *See* 35 U.S.C. § 314. Both the 1980 and 1999 frameworks explicitly instructed that the PTO's decision to commence a review was final and non-appealable. 35 U.S.C. §§ 303(c), 312(a), (c).

In 2011 the review process was revised again through the America Invents Act ("AIA"). Through the AIA, Congress created two new types of administrative proceedings to challenge the validity of an issued patent: (1) inter partes review; and (2) post-grant review. The PTAB is responsible for conducting the inter partes review. 35 U.S.C. § 316(c). The PTAB must decide whether to grant a third-party petition to institute review within three months of receiving the petition. *Id.* §314(b). *Id.* While this threshold decision to institute inter partes review is final and nonappealable, "[a] party to an inter partes review or a post-grant review who is dissatisfied with the final written decision of the [Board]…may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit." Id. §§ 141(c), 319. Generally, the entire PTAB inter partes review is complete within one year of the institution of the proceedings. *Id.* § 316(a)(11).

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) permits the defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The court must dismiss the action if it determines at any time that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Defendants may, as in this case, attack "the existence of subject matter jurisdiction in fact, quite apart from any pleading" because even with sufficient pleading, the district court could not have jurisdiction over the claim. *White v. CMA Const. Co. Inc.*, F. Supp. 231, 233 (E.D. Va. 1996). The plaintiff bears the burden to establish that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A district court should grant a Rule 12(b)(1) motion if the material jurisdictional facts are known and the moving party is entitled to prevail as a matter of law. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

4

### III. Discussion

Plaintiff complains that Defendant Lee's extension of the filing deadlines was in excess of her statutory authority and therefore a violation of the APA. A ruling that her actions violated the APA is essential to all of the other relief Plaintiff seeks: a declaration that the deadline extension is invalid and unenforceable and an injunction against applying, enforcing, or relying on the deadline extension—including with respect to the IPRs requested by the Intervenor-Defendants. Therefore, the Court focuses on whether it has subject matter jurisdiction over the APA action, finding that, as discussed below, it does not. Specifically, a collateral attack on an ongoing IPR proceeding is inconsistent with the statutory scheme under the AIA, Defendant Lee's announcement was not a final agency action subject to review, and the Plaintiff has an adequate alternative remedy through an appeal of the IPR to the Federal Circuit.

#### A. Collateral Attack on IPR Proceedings is Foreclosed by the Statutory Scheme

While the APA "confers a general cause of action on persons adversely affected or aggrieved by an agency action" this general grant is withdrawn "to the extent the relevant statute precludes judicial review." *Block v. Cmty Nutrition Inst.*, 467 U.S. 340, 345 (1984) (quotations and citations omitted). Therefore, the Court only has jurisdiction to hear Plaintiff's APA claim if the statute does not preclude judicial review. To determine whether the statute precludes judicial review the Court must look to the statute's express language, the structure of the statutory scheme, its objectives, legislative history, and the nature of the administration action involved. *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1357–58 (Fed. Cir. 2012) (citing *Block*, 467 U.S. at 345).

By the plain language of the statute, the Court does not have jurisdiction over any direct challenge to the institution of the IPR proceedings. *See* 35 U.S.C. § 314(d) ("The determination

by the Director whether to institute an inter partes review under this section shall be final and nonappealable.").

Plaintiff attempts to escape this prohibition by arguing that the Complaint does not challenge the decision to institute any specific IPR. Rather, Plaintiff facially challenges Defendant Lee's announcement extending the filing deadline with respect to all PTO filings—not just IPR applications. However, courts in this district have encountered, and rejected this collateral tactic before. In *Synopys v. Lee*, Judge Cacheris examined in great detail whether Congress intended through the AIA to preclude APA challenges to PTO regulations which bear on ongoing IPR proceedings. No. 1:14CV674 JCC/IDD, 2014 WL 5092291, at *4 (E.D. Va. Oct. 9, 2014), *opinion vacated, appeal dismissed*, 812 F.3d 1076 (Fed. Cir. 2016).[1] In *Synopsys*, the plaintiff brought "a challenge to a USPTO regulation regarding the process for inter partes review" specifically the right for the PTO to institute a partial IPR review of certain claims. *Id.* at *5. The plaintiff had received a final written decision on the IPR from the PTAB and had noticed an appeal to the Federal Circuit. *Id.* at *2. During the pendency of the appeal process, the plaintiff brought an APA action in District Court challenging the regulation relied on in instituting the IPR proceeding. *Id.* In considering the appropriateness of the APA action, the court observed that "[n]o evidence suggests that Congress sought to immunize from review the type of challenge to the USPTO's regulation and practices at issue here." *Id.* Though the plain language of the statute did not affirmatively vest or preclude judicial review of regulations and

---

[1] The opinion in *Synopsys* was vacated by the Federal Circuit because of that court's decision in a parallel case, *Synopsys Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309 (Fed. Cir. 2016). *See Synopsys, Inc. v. Lee*, 812 F.3d 1076 (Fed. Cir. 2016). The vacatur does not prevent the Court from relying on Judge Cacheris's reasoning. First, as the dissent in the Synopsys Federal Circuit opinion observed that although "the district court did not have jurisdiction…[a]bsence of jurisdiction does not render a case 'moot', as the panel majority posits for there is nothing to moot." *Id.* at 1078 (J. Newman, dissenting). Second, a vacated decision may still provide persuasive reasoning where it presents thorough and germane analysis of the issue presented to the Court. *See, e.g., United States v. Brown*, 715 F. Supp. 2d 688, 692, n. 4 (E.D. Va. 2010) (finding that "[a]lthough vacated, *Skoien* still provides persuasive reasoning" and that *Skoien* "conducted perhaps the most thorough analysis to date of what [the binding law] demands.").

practices, the court in *Synopsys* found that it was the intent of Congress, supported by the AIA's

plain language and legislative history, to preclude a collateral judicial review of regulations

authorizing the partial IPRs. *Id.* at *9. Congress's purpose in enacting the AIA was to improve

the efficiency of the patent review process. *See* H.R.Rep. No. 112–98(I), at 39 (2011) ("The

legislation is designed to establish a more efficient and streamlined patent system that will

improve patent quality and limit unnecessary and counterproductive litigation costs."). The

requirement that final written orders be appealed directly to the Federal Circuit removed an

intermediate level of review by the district courts thereby increasing the efficiency of the review

process. *See* 157 Cong Rec. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl) ("The bill

also eliminates intermediate administrative appeals of inter partes proceedings . . . instead

allowing parties to only appeal directly to the Federal Circuit."). As the court in *Synopsys* found,

allowing some claims to be adjudicated in the district court while others are directly appealed to

the Federal Circuit is "contrary to the plain statutory language and inefficient, directly the

opposite of what Congress intended when enacting the AIA." *Synopsys*, 2014 WL 5092291, at

*7.

        The posture of this case is strikingly similar to the one faced by the court in *Synopsys*.

The plain language of the statute does not affirmatively vest or preclude judicial review of

Defendant Lee's decision. However, the relief Plaintiff seeks will, as in *Synopsys*, and by the

party's own admission, interfere with ongoing IPRs. Plaintiff speculates that a favorable finding

by the Court "likely would cause the Board to reconsider timeliness questions" and

retrospectively decline to hear the IPRs. Dkt. No. 58, at 2. As in *Synopsys*, even though

Plaintiff's complaint is postured as a facial APA challenge, the relief it practically seeks is a

reconsideration of already instituted and ongoing IPRs, a result precluded by statute. If the Court

granted Plaintiff's requested relief, it would enable, as the court in *Synopsys* feared, a bifurcated

legal system where decisions on the merits of the IPR would be appealed directly to the Federal

Circuit but legal challenges to procedures and policies relating to those IPRs could be reviewed

first in the district court and then on appeal to the Federal Circuit. Such a result is contrary to the

statutory regime and strongly disfavored by courts. *See Synopsys*, 2014 WL 5092291, at*5; *City

of Rochester v. Bond*, 603 F.2d 927, 936 ("The policy behind having a special review procedure

in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds

between district court and the courts of appeals.").

Consistent with this reasoning, courts in this district have repeatedly dismissed

purportedly facial challenges to the AIA, for which the Plaintiff was seeking collateral relief with

respect to ongoing PTO proceedings, for lack of subject matter jurisdiction because those claims

should properly be presented to the Federal Circuit. *See Synopsys*, 2014 WL 5092291, at *9;

*Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912, 923 (E.D. Va. 2013), *aff'd sub nom. Versata

Dev. Grp., Inc. v. Lee*, 793 F.3d 1352 (Fed. Cir. 2015) (denying a challenge to the process of

instituting post-grant patent review because "[f]inding jurisdiction in the instant case would

sanction a parallel court proceeding under the APA against express congressional intent made

evident by the AIA's passage."); *Mentor Graphics Corp. v. Rea*, 2013 WL 3874522, at *3 (E.D.

Va. July 25, 2013) (denying a facial challenge to the PTAB's interpretation of 35 U.S.C. §

315(b) concerning the statute of limitations for filing because "Congress has chosen an adequate

alternative remedy allowing for direct Federal Circuit review at the culmination of the PTAB

proceedings to streamline the review process while maintaining the parties' full rights to judicial

review."). The Court finds that the reasoning in *Synopsys* and these related decisions squarely

addresses the present Motion. Collateral APA attacks in the district court on ongoing IPR

proceedings improperly contravene the Congressional intent to confer IPR review jurisdiction solely on the Federal Circuit. Accordingly, the Court lacks subject matter jurisdiction over the Complaint.

### B. Defendant Lee's Announcement Was Not a Final Agency Action

Even if the Court grants Plaintiff's argument that the Complaint is strictly a facial challenge to the extension of the deadlines for all PTO filings and not a collateral challenge to an ongoing IPR, the Court would still not have subject matter jurisdiction over Plaintiff's challenge because Plaintiff seeks invalidation of a non-final agency action. *See U.S. Ass'n of Importers of Textiles v. U.S. Dep't of Commerce*, 413 F.3d 1344, 1348 (Fed. Cir. 2005). ("a 'final agency action' is required before judicial review is appropriate."). For an agency decision to constitute a final action, "[f]irst, the action must mark the consummation of the agency's decision making process," and "second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1810 (2016). "The 'legal rights or consequences' that make an agency determination 'final' under the APA generally have an immediate legal impact on the party in question . . . [and] usually require some positive action on the part of the affected party or a concrete and immediately-felt harm." *Wollman v. Geren*, 603 F. Supp. 2d 879, 885 (E.D. Va. 2009). A merely procedural rule, which does not impose harm, is not generally regarded as a final agency action. *See Aluminum Co. of Am. v. United States*, 790 F.2d 938, 942 (D.C. Cir. 1986) (Scalia, J.) ("if the denial of a procedural right constitutes final agency action, then the doctrine of finality is indeed an empty box"); *Abbs v. Sullivan*, 963 F.2d 918, 927 (7th Cir. 1992) (explaining that there is a "critical difference between challenging a rule of conduct that carries sanctions for its violation and a rule of procedure.").

Plaintiff asserts that it has pleaded direct and immediate effects on its day-to-day business as a result of the extended filing deadline. But none of Plaintiff's concrete and immediately felt harms, including the cost and inconvenience of litigating the IPRs or the effect on Plaintiff's business because of the "cloud" over the validity of the patents, were directly caused by Defendant Lee's promulgation. Plaintiff suffered no harm on the day that the promulgation was made. At that time, its alleged injuries were contingent on future agency action. Had the PTO declined to institute an IPR, Plaintiff would have suffered no injury. *See Mentor Graphics Corp.*, 2013 WL 3874522, at *3 ("A decision to institute inter partes proceedings here 'does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action,'") (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)). Plaintiff's alleged injuries arose only after the PTO instituted an IPR and they are the same injuries that Plaintiff would have suffered whether the IPR request was filed by the Intervenor-Defendants or any other interested party, notwithstanding Defendant Lee's announcement. These injuries caused by the IPR do not transform Defendant Lee's announcement into a final agency action. *See id.* ("Mentor Graphics' claim of a 'stigma' surrounding its patent because of the inter partes review is unavailing. The concern over any stigma in this instance is purely conjectural and insufficient to make the PTAB's decision a final agency action."). The only effect of Defendant Lee's promulgation was that Intervenor-Defendants could file pursuant to the deadline permitted in the promulgation instead of pursuing an alternative mechanism for filing within the statutory deadline. [2] Plaintiff suffered no immediate harm from the announcement and Plaintiff's Complaint might prove to be

---

[2] Among those alternative mechanisms, Intervenor-Defendants could have requested permission from the PTO to file the IPR by mail pursuant to C.F.R. § 42.6(b)(1), or dropped the only belatedly filing party, Samsung, who could have then rejoined the proceedings under 35 U.S.C. § 315(c). Thus, even without Defendant Lee's actions, Plaintiff still could have suffered the same injuries alleged in the Complaint.

unnecessary upon completion of the agency process. It is inappropriate and inefficient for the court to take jurisdiction over such contingent and non-injurious agency actions. *Id.* at \*2 ("Allowing district courts to exercise APA jurisdiction over a non-final agency decision 'leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary.'") (*quoting FTC v. Standard Oil Co.*, 449 U.S. 232, 242 (1980)).

Even though Plaintiff's injuries were contingent on events independent of Defendant Lee's actions, Plaintiff counters that her announcement was a final agency action because it granted petitioners a right to pursue PTAB review of patents for which the statute of limitations had already expired. Thus, Plaintiff contends that her act constitutes a final agency action because it expands or narrows the field of potential plaintiffs in further litigation. *See Hawkes*, 136 S. Ct. at 1814. But *Hawkes* is distinguishable from the case at bar. In *Hawkes*, the Supreme Court noted that either a "positive" or a "negative" jurisdictional determination by the Army Corps of Engineers (that a property contained "waters of the United States") would have substantial legal consequences for the ensuing five year period because it would grant or deny the applicant a safe harbor against Clean Water Act lawsuits. *Id.* at 1814-15. The legal rights of the parties were defined directly by the jurisdictional determination. By contrast, Defendant Lee's act did not directly confer or rescind any legal rights. First, the effects of the announcement on Plaintiff's patents was contingent on, (1) a party filing an IPR request through the electronic system at the later deadline, and (2) the PTO instituting an IPR. Second, the Intervenor-Defendants (and any other interested party) still had the right to request an IPR of Plaintiff's patents. Defendant Lee's act merely altered one of the mechanisms for filing the request, via electronic submission, to account for the inaccessibility of the electronic system.

11

Intervenor-Defendants relied on this guidance to choose their method of submission. The substantive right to file the IPR request was not disturbed by Defendant Lee's conduct. Thus, Defendant Lee's act did not expand "the field of potential plaintiffs and limit[] the potential liability" for Plaintiff. When Defendant Lee made her announcement on December 22, the field of potential plaintiffs did not change because Intervenor-Defendants were still free, as of that date, to file an IPR request under any available means.

Plaintiff's other attempts to characterize Defendant Lee's announcement as a final agency action also fail. Plaintiff argues that the Supreme Court has recognized statutes of limitations as substantive, rather than procedural, rules of law, and should apply the same reasoning here. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945). In *Guaranty Trust*, the Supreme Court held that under the *Erie* doctrine, a federal court sitting in diversity must follow a state's statute of limitations on state law claims because "a statute that would completely bar recovery in a suit if brought in a State court bears on a State created right vitally and not merely formally or negligibly." *Id.* at 110. First, in *Guaranty Trust* the Supreme Court was tasked with balancing difficult questions of Federalism only a few years after the landmark decision in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). By contrast, this case concerns the less contentious relationship between agency regulations and statute, and numerous courts in this district have already analyzed the statutory scheme. Second, the Supreme Court looked beyond "whether a statute of limitations is deemed a matter of 'procedure' in some sense" to consider its material effect on the filing party. *Id.* at 109; *see also Food Town Stores, Inc. v. E.E.O.C.*, 708 F.2d 920, 923 (4th Cir. 1983) (finding no support for "the proposition that finality can turn on a substantive-procedural distinction" and instead holding that an action is final where it "involve[s] a definitive regulation that affected the legal right...of the aggrieved plaintiff."). The peace of

12

mind provided by a statute of limitations is a material benefit to Plaintiff. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980) ("The statute of limitations establishes a deadline after which the defendant may legitimately have peace of mind."). But, as noted above, the only effect of Defendant Lee's announcement was to amend the electronic filing protocol because the system was unavailable for a certain period of time. On December 22nd the Intervenor-Defendants were still free to file the IPR requests by any appropriate means. Therefore, the deadline extension for electronic filing bears on all parties' rights only formally and negligibly, because it changed the manner in which an IPR could be filed but not the substantive right to file. *See Guaranty Trust Co.*, 326 U.S. at 110.

### C. Plaintiff Has Access to an Alternative Adequate Remedy

Even if Plaintiff's challenge was not foreclosed by the statutory scheme and was a final agency action eligible for review, Plaintiff's claim would still fail because the AIA provides an alternative adequate remedy in the Federal Circuit, thus barring judicial review in this Court. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."). The remedy is adequate even if the arguments which can be raised on appeal to the Federal Circuit are not identical to those available in an APA suit. *See Pregis*, 700 F.3d at 1360-61 (Fed. Cir. 2012) ("[T]he fact that the defenses available under 35 U.S.C. § 282, or in a challenge to a patent through *inter partes* reexamination, are not identical to an APA suit does not render the carefully-considered judicial remedies provided by the Patent Act 'inadequate.'"). Accordingly, courts in this district have routinely held that the statutory review scheme promulgated in the AIA constitutes an adequate alternative remedy. *See, e.g.,Synopsys*, 2014 WL 5092291, at *9; *Versata*, 959 F. Supp. 2d at 923-26.

Plaintiff's claim that "the PTO makes quite clear that it believes *no* such review is available" is inconsequential to the Court's analysis. Dkt. No. 52, at 25 (emphasis original). But even if the PTO was arguing this position it would not bind the reviewing court. In fact, the Federal Circuit has previously reviewed quasi-facial challenges like the one Plaintiff brings here. In *In re Cuozzo Speec Techs., LLC*, the Federal Circuit analyzed a patent holder's facial challenge that the PTO lacked authority to promulgate a regulation imposing a broadest reasonable interpretation standard in IPR proceedings. 793 F.3d 1268, 1275–76 (Fed. Cir. 2015), *cert. granted sub nom. Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 890 (2016), *and aff'd sub nom. Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016). Similarly, in *Synopsys, Inc. v. Mentor Graphics Corp.*, the Federal Circuit considered the merits of the facial challenge which courts in this district held were not appropriately before them in APA actions in *Synopsys v. Lee* and *Mentor Graphics v. Rea*. 814 F.3d 1309, 1316 (Fed. Cir. 2016). As these decisions illustrate, the Federal Circuit has exercised its authority to consider facial challenges to PTO regulations which bear on IPR proceedings. As a result, the appropriate venue for the parties to debate whether the Federal Circuit should reach the merits of Plaintiff's quasi-facial challenge is before that court. Plaintiff is free to take its claim to the Federal Circuit for adjudication once a final decision has been issued on the IPR, pursuant to the AIA's jurisdiction-channeling scheme.

## IV. Conclusion

For the foregoing reasons, Defendants Motions to Dismiss are GRANTED and the Complaint is DISMISSED WITH PREJUDICE. An appropriate Order shall issue.

Dec 2, 2016

/s/

Liam O'Grady
United States District Judge

14